Patricia Lee (8287)
**HUTCHISON & STEFFEN, LLC**
Peccole Professional Park
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile (702) 385-2086
plee@hutchlegal.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ETERNAL CHARITY FOUNDATION, A Nevada Non-Profit Corporation; THE KALGIDHAR TRUST, A Nevada Trust,<br><br>Plaintiffs,<br>Vs.<br><br>BBC BROADCASTING INC, A Washington Corporation And Licensee Of Station KRPI (AM) 1150 KHZ, Ferndale Washington; KRPI-AM 1550 KHZ-SHER-E-PUNJAB RADIO BROADCASTING INC, A Corporation In Richmond, British Columbia; BHAG SINGH KHELA, An Individual; KULDIP SINGH; An Individual JAGREET SINGH GILL, An Individual, AMARJIT SINGH DUGGAL, An Individual,<br><br>Defendants. | CASE NO.:<br><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff, Eternal Charitable Foundation ("ECF") and The Kalgidhar Trust, ("TKT"), pursuant to the Federal Rules of Civil Procedure, hereby files their complaint for injunctive relief and damages against defendants and in support thereof, states as follows:

### Introduction

1. By this action, ECF and TKT seek to recover monetary damages from the

defendants as a result of their publications of false, defamatory statements that have harmed the reputation and image of Plaintiffs. ECF and TKT also seek injunctive relief against the defendants prohibiting them from continuing to publish, broadcast or post/share on the internet, or anywhere else, false defamatory statements concerning the Plaintiffs.

**Jurisdiction**

2. This Court has jurisdiction over this action based upon 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

3. Defendants are subject to personal jurisdiction of this Court because the false and defamatory statements were broadcasted/published in the State of Nevada, and the target of the defamatory statements was and remain residents of the State of Nevada.

**Venue**

4. Venue is proper in the United States District Court for the District of Nevada – Las Vegas, pursuant to 28 U.S.C. § 1391(a), because Clark County, Nevada, is the county in which all or a substantial part of the events and omissions giving rise to this claim occurred.

**Parties**

5. Eternal Charitable Foundation ("ECF"), is a domestic non-profit corporation in the State of Nevada with its principle place of business in Clark County, Nevada. The foundation is a 501(c)(3) organization whose mission is to focus on providing quality education in an effort to combat the rise in drug and alcohol abuse. In furtherance of this mission, ECF provides a broad range of socio-economic programs promoting world peace through value-added education, providing healthcare, social welfare to the under-privileged and promoting women empowerment through, among other things, self-employment. Generally speaking, ECF seeks to spread the message of loving one another, irrespective of race, color, religion, sex, national origin and disability.

6. The Kalgidhar Trust ("TKT") is a world renowned organization with offices in USA, UK and Canada.

7. Upon information and belief, Defendant BBC Broadcasting Inc. is incorporated in the state of Washington and a licensee of station KRPI AM 1550 ("KRPI") doing business as KRPI AM 1550 kHz- Sher-E-Punjab Radio Broadcasting, Inc. under a local marketing agreement.

8. Upon information and belief, Defendant Sher-E-Punjab Radio Broadcasting, Inc. is incorporated in Richmond, British Columbia.  KRPI, is the radio station broadcasting a multicultural format serving the South Asians who reside primarily in Seattle, Washington and Metro Vancouver.  The radio station is licensed in Washington State and broadcasts through the internet, as well as through other media outlets, to residents in the State of Nevada as well as the whole world.  The radio station is located in Ferndale, Washington.

9. Upon information and belief, Defendant, Bhag Singh Khela is the owner of KRPI who resides in the State of Washington.

10. Upon information and belief, Defendant Kuldip Singh is the radio show host of KRPI who resides in British Columbia, Canada.

11. Upon information and belief, Defendant Jagreet Singh Gill, is an individual residing in the State of Virginia.

12. Upon information and belief, Defendant Amarjit Singh Duggal, is an individual residing in the State of Georgia.

**Facts**

13. The Kalgidhar Trust ("TKT") is a world renowned organization with offices in USA, UK and Canada.  Registered as a charitable organization in 1982, TKT started its first school for rural children in 1986 with just five (5) students in one of the poorest districts of India.

14. Today, TKT has become one of the largest educational bodies in the Sikh community worldwide with one hundred twenty nine (129) low-cost schools benefitting approximately sixty thousand (60,000) rural students across five (5) North Indian states spanning thirty three (33) districts and two (2) private universities.  TKT has also created a plethora of social development programs such a charitable hospital with access to two

HUTCHISON & STEFFEN
A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

hundred and eighty (280) beds, two (2) drug rehabilitation centers, an elderly and widow home, and women empowerment programs such as Free Teachers Training that has already placed approximately two thousand (2,000) young girls as teachers or support staff after a four to five (4-5) year course.

15. TKT has been instrumental in bringing quality education to the youth, focusing on values such as abstaining from alcohol and drug abuse, which are issues that have proliferated throughout North India. Thousands of families have benefitted due to the social endeavors of these children to spread the message of anti-liquor and anti-drugs through regular roadshows and rallies. Such has been the impact of these youngsters that two hundred and thirty two (232) villages in Punjab have opted to be liquor-free in 2016.

16. The President of TKT is Baba Iqbal Singh, a retired Director from the agriculture department of the Himachal Pradesh Government who has been honored as the fifth most influential Sikh in the world. He has also received the lifetime achievement award from NICER (National Institute of Cleanliness Education & Research). The New York state assembly also conferred an award to Baba Iqbal Singh for being an outstanding individual, one which is worthy of the esteem of the country, the community, and the great state of New York. Recently, he has also been nominated to receive a Life-time Achievement award by Top Sikh 100, a UK based organization.

17. The Vice-President of TKT is Dr. Khem Singh Gill, who retired as Vice Chancellor of India's prime agricultural University - PAU (Punjab Agriculture University, Ludhiana). He was awarded with the Padma Bhushan award (third highest civilian award) by the Indian Government.

18. Defendants Jagreet Singh Gill and Amarjit Singh Duggal are both sons of ex-trustees of The Kalgidhar Trust in India. Jagreet Singh Gill is the son of Dr. Gurbaksh Singh Gill (ex-trustee). Amarjit Singh Duggal is the son of Gurnam Singh Duggal (ex-trustee).

19. ECF was registered as a charity through the Secretary of State of Nevada on November 20, 2007 and was exempt from taxation pursuant to 26 U.S. Code § 501(c)(3) on March 27, 2009. The board of ECF consists of Paul Khela (president), Rajwinder Singh

1  Dhaliwal (secretary), Ravideep Kaur (treasurer) and Ravinder Pal Singh Kohli (non-resident
2  director).

3    20.    ECF spreads awareness about the activities in rural India, arranges for cultural
4  exchange of ethnic American-Indian youth in remaining rooted to the values of Indian culture,
5  and raises funds from its supporters for the philanthropic activities in rural India through the
6  programs implemented by The Kalgidhar Trust.

7    21.    Upon information and belief, Defendant Jagreet Singh Gill always wished for a
8  place in the ECF and later in TKT.  Unable to become part of the organization, Jagreet Singh
9  Gill began sending defamatory emails with malicious interests targeting certain key
10  functionaries of TKT India.  Many senior functionaries of TKT left the organization after not
11  being able to bear the social shame that Jagreet Singh Gill managed to inflict upon them.

12    22.    Most senior functionaries were savagely shamed and intimidated by Jagreet
13  Singh Gill's tirades, yet they chose to remain focused on their charitable mission despite their
14  families being shamed publicly.

15    23.    On July 14 2014, a notice was issued to Jagreet Singh Gill by attorney Dicky
16  Walia, on behalf of TKT.

17    24.    Jagreet Singh Gill pleaded for pardon and asked to meet Baba Iqbal Singh,
18  president of TKT.  He also alleged that he did not have enough money with him to travel from
19  Washington to Chicago, where the president of TKT was at that time during his US trip.

20    25.    ECF purchased an airline ticket for Jagreet Singh Gill to accommodate his
21  presence at the meeting.

22    26.    Jagreet Singh Gill met the president on July 21, 2014 and pleaded for pardon in
23  the presence of five other US residents and handwrote an apology addressed to two senior
24  functionaries of TKT, India.

25    27.    There was silence on his part for more than six months, but unfortunately, he
26  again started his smear campaign escalating it to Facebook, WhatsApp, YouTube, E-Mails,
27  Radio Shows and by phone calls.

28    28.    Amarjit Singh Duggal started a diatribe against ECF & TKT after he joined

1  hands with Jagreet Singh Gill.  Amarjit Singh Duggal produced videos to spread his false
2  defamatory statements and continued publishing his writings which tarnished the reputation
3  and image of ECF and TKT.

4      29.    For example, on July 16, 2016, KRPI Sher-E-Punjab Radio 1550 AM
5  broadcasted a radio segment together with Amarjit Singh Duggal and Jagreet Singh Gill
6  making the following false defamatory statements: that "the girls in the academy are being
7  sexually exploited", that rapes are taking place in the academies, that plaintiffs "have cheated
8  in the name of education;" that the plaintiffs have embezzled "money obtained through
9  donations to spend on organized crime", such as kidnappings; that the "teachers of the
10 academy are illiterate;" and that there are "fake trustees in the organization." This Radio Show
11 was promoted by all the defendants on the internet as well.

12     30.    These are only a portion of the defamatory statements that have been made.

13     31.    There are multiple Facebook posts that also accuse ECF and TKT of being
14 involved in sexual exploitations of victims during their studies at the academies, that "rapes
15 are taken [sic] place and are not being reported by management", that there are "torture
16 centers and students are the victims of inhuman torture", and that gang rapes are taking place.

17     32.    The multiple statements are defamatory because they falsely impute to plaintiff
18 academic corruption, fraud, deceit, as well as the commission of criminal offenses, in a
19 manner ruinous to the reputation and esteem of Plaintiffs professionally, locally, nationally,
20 and globally.

21     33.    The statements individually and collectively are false, and were false when
22 made, and defendants knew or should have known the statements were false when made.

23     34.    Defendants have acted with actual malice and willful intent to injure plaintiff.
24 The statements were made with reckless disregard to their truth or falsity or with the
25 knowledge of their falsity and with willful disregard of the reputation and rights of the
26 plaintiff.

27     35.    Defendants lacked reasonable grounds for making the statements.
28     36.    These actions led to a major loss of reputation to ECF and TKT worldwide.

37. ECF and TKT seek damages from all the defendants considering that donations dropped from approximately $ 3.4 million in 2014 to $ 1.9 million in 2015 and further to half a million in the first seven months of the fiscal year 2016.

### General Allegations

38. Plaintiffs have hired the undersigned counsel to enforce its rights and have agreed to pay reasonable attorneys' fees related to this litigation.

### COUNT I

### (Defamation Against All Defendants)

39. Plaintiffs restate each and every allegation contained in the preceding paragraphs of this Complaint as it fully set forth herein.

40. On or about July 16, 2016, KRPI radio station broadcasted and published a segment with defendant Kuldip Singh as its host, stating and accusing Plaintiffs of the following crimes: rape, embezzlement, sexual exploitation, extortion, fraud, theft, harassment, misappropriation of funds, criminal threats, torture and kidnapping.

41. Further, defendants Amarjit Singh Duggal and Jagreet Singh Gill, were invited to speak during the segment and also accused plaintiffs of the crimes listed above.

42. The defamatory statements are false.

43. The allegations are slanderous and libelous on their face. The publications clearly exposes Plaintiffs to hatred, contempt, ridicule and obloquy because it accuses Plaintiffs of being involved in a series of serious crimes involving moral turpitude and/or felonies. It also exposes Plaintiffs to matters incompatible with their business, trade profession or office and it accuses Plaintiffs of serious sexual misconduct.

44. Defendants' false and defamatory statements were published with the intent to harm Plaintiffs' good names and reputation by falsely accusing Plaintiffs of criminal acts.

45. Defendants published these false and defamatory statements with actual malice and knowledge that the statements were false, or with reckless disregard for whether they were false or not.

46. Defendants continue to engage in the publication of further defamatory

statements about Plaintiff.

47. Defendants published or caused these defamatory statements to be published by posting said statements on Facebook and broadcasted the radio segment in Washington which was heard in British Columbia, stations across Canada and the USA, including Nevada. KRPI, per their website, had dedicated listeners from the local area and as far as Australia, Europe and India.

48. Since the postings and broadcast, the false and defamatory statements published by Defendants regarding Plaintiffs have remained available to millions of internet users, and Plaintiffs have no means of removing these false and defamatory statements from the internet.

49. As a direct and proximate result of the above-described publication, Plaintiffs have been and will continue to be damaged and injured in their respective character and reputation, in an amount in excess of $75,000.

50. Defendants have defamed Plaintiffs with intent, malice, and/or with a reckless disregard for the falsity of the statements made and should therefore be compelled to pay punitive damages to Plaintiffs in an amount to be determined at trial.

## COUNT II

**(Slander Per Se Against All Defendants)**

51. Plaintiffs restate each and every allegation contained in the preceding paragraphs of this Complaint as it fully set forth herein.

52. On or about July 16, 2016, Defendants made the following defamatory statements to the public concerning Plaintiff in a show broadcasted by KRPI, including but not limited to:

   a. Defendant Kuldip Singh stated "today I have with me two eye witnesses . . . [who] shall share with you in their own version, how the money donated by you people is being used, how young girls are being exploited in the name of education."

   b. Defendant Kuldip Singh stated "there I came to learn that . . . girls are

being exploited there."

c. Defendant Kuldip Singh stated "that money was to be spent on humanity, some needy or education purpose, but how that money is being used on organized crime."

d. Defendant Kuldip Singh stated "we came to know that in some academies girls are being exploited manhandled."

e. Defendant Kuldip Singh stated "illiterate people are participating in educational institute."

f. Defendant Kuldip Singh stated "sex scandals are running there."

g. Defendant Kuldip Singh stated "how long will you keep on being looted by someone else."

h. Jagreet Singh Gill stated: "they decided that each child accompanying in Dhadi Vaaran should be given 9,000 dollars to carry with him/her in cash and also they were given gold bracelets weighing 250 gm per child thereby in one route gold weighing 2.5 kg to 3 kg was being carried to India."

i. Jagreet Singh Gill stated "99 % Canola is being sold fooling the general public, which are stamped as Baru Shaib. To run this factory a loan of Rs. 100 crores was taken in the name of Kalgidhar trust, which is illegal."

j. Jagreet Singh Gill stated "the biggest fraud ever played with Sikhs, in the history of the world, if ever happened then it was at Baru Shabi's history."

k. Jagreet Singh Gill stated "this was just to take control of this institution and to threaten the people that I will shoot if anyone goes against me. He was the hitman they had kept with them."

l. Jagreet Singh Gill stated "and this criminal mentality they had, they used to extort those girls who were from poor background, those families where there was nothing to eat or were from poor financial background."

m. Jagreet Singh Gill stated "these people not only exploit girls but even teachers are not left alone/ safe because Haryana and Rajasthan, Kaka is

from Haryana, all his family is in it."

n. Jagreet Singh Gill stated "second sample was as were talking about earlier about Russian Drum Master, he tried to rape a girl at Akal Academy, this is incident of last week."

o. Jagreet Singh Gill stated "In any academy of Baru Sahib, I do not think the virtue of your sister or daughter is safe now, whether she is there as a student or as a teacher."

p. Amarjit Singh Duggal stated "those people are as on date hand and glove with organized crime.  These people threaten others, these people gobble up money by putting pictures of Sant Attar Singh Ji in the background."

q. Amarjit Singh Duggal stated "and these kids who we put in service, when they had tasted the blood of money, when they tasted the blood of raising their families, when they tasted the blood of after collecting the money to put half of that money in their own pocket."

r. Amarjit Singh Duggal stated "they have sold the religion. There is only dummy of religion in the name of religion."

s. Amarjit Singh Duggal stated "as far as ransom is concerned, that guy in Cheema Sahib, I will not disclose his name, who is doing seva in Cheema, he was abducted by someone, and now we are coming to hear the kidnapping was also done by themselves . . . bottom line is that only after he was abducted, he was get released after paying Rs. 20 lacs as ransom and it was never disclosed to the congregation or immediate volunteers as to why he was kidnapped and why ransom was given for him."

t. Amarjit Singh Duggal stated "I was threatened by telephone by Kaka Jagjit Singh to return from there itself."

53. The statements made by Defendants, and each of them, injure Plaintiffs in their occupation and reputation as the publications clearly exposes Plaintiffs to hatred, contempt, ridicule and obloquy.  The statements made by Defendants, and each of them, further accuse

1  Plaintiffs of being involved in a series of serious crimes involving moral turpitude and/or a
2  felonies.  It also exposes Plaintiffs to matters incompatible with their business, trade
3  profession or office and it accuses Plaintiffs of serious sexual misconduct.

4      54.    Upon information and belief, the public understood that the statements were
5  about the Plaintiffs as the statements were made of, concerning, and mentioned Plaintiffs
6  expressly.

7      55.    All statements are entirely false, and are defamatory, slanderous on their face,
8  as Plaintiffs have not committed any crime of rape, embezzlement, sexual exploitation,
9  extortion, fraud, theft, harassment, misappropriation of funds, criminal threats, torture or
10 kidnapping.

11     56.    Upon information and belief, Defendants, and each of them, failed to use
12 reasonable care to determine the truth or falsity of the statements.  The wrongful conduct of
13 defendants, and each of them, was a substantial factor in causing Plaintiffs' harm, including
14 but not limited to harm to their business, trade, profession and/or occupation and harm to their
15 reputation.

16     57.    As a proximate result of the above-described statements, Plaintiffs have
17 suffered loss of their reputation, shame and mortification all to their respective detriments.

18     58.    As a further proximate result of the above-described statements, Plaintiffs have
19 suffered loss of business, in an amount in excess of $75,000.00.

20     59.    Upon information and belief, by engaging in the above conduct, Defendants,
21 and each of them, acted with malice, oppression, and/or fraud, entitling Plaintiffs to
22 exemplary and punitive damages.

23 **COUNT III**
24 **(Libel Per Se Against Jagreet Singh Gill and Amarjit Singh Duggal)**

25     60.    Plaintiffs restate each and every allegation contained in the preceding
26 paragraphs of this Complaint as it fully set forth herein.

27     61.    Defendants made written statements accusing plaintiffs of the aforementioned
28 crimes.  The statements were written with the intent to injure Plaintiffs in their profession

because they falsely impute Plaintiffs with academic corruption, fraud and deceit as well as the commission of a criminal offense, in a manner injurious to the reputation and esteem of Plaintiffs professionally, locally, nationally, and globally.

62. These written statements are found throughout Jagreet Singh Gill's Facebook and YouTube ranging from June 18, 2016 to the present. Jagreet Singh Gill has published many written statements including but not limited to:

a. "The mom came here to get her daughter which Baru people have refused to give to the mother. Then she went to the corrupt Indian Court system."

b. "Plz read my other posts that Baru is a Safe Heaven for criminals as in the past few criminals were hidden here in rented rooms. One of them was a SSP from Mohali was wanted for in a suicide case."

c. "Many girl students have complained about his eve teasing issues but management has not taken any action against him so far."

d. "This is not the only rape case happened in Baru but many other cases happened as well. You can see 2nd pic I sent to Dr. Davinder Singh on his WhatsApp if he throw these responsible people out to keep issues under cover to save the reputation of many girls who got education from Baru that those girls might have been the victims of sex exploitations during their study."

e. "Many other sex exploitations issues will be posted soon."

f. "He attempted to rape a girl in Akal Academy few days ago."

g. "This was another rape in Baru of a student by an employee. I sent this pic to Dr. Davinder Singh but he did no reply so far. He is helping rapist by not reporting to the police."

h. "This was started by the donation money for illegal business purpose which I told on Sher E Punjab radio show that $9,000 cash was carried by every member of Jatha of 10-12 members used to come for religious cum business fund raising."

     i.  "Donors can file a case for FRAUD against the fundraiser of their local area who were misleading people and helped Baru to loot."

     j.  "Now duswandh is being spent to develop this land. **That's what I stared on my fb page to expose these baru thugs. For info plz. go to my page.**"

     k.  "It is clear that Kalgidhar Trust does not any interest to educate children."

     l.  "This is the new upgraded torture facility of Baru. First torture center was run in a small room #10. This area is closed to the general public."

     m.  "Now even rape has become a common thing in Baru. Sikhs saved other's sisters and daughters from Mughals. Now they rape their own sisters and daughters."

     n.  "This video is proof to spread the violence."

     o.  "Is it a coincidence or a planned MURDER to go near the water tank and die on Sunday?"

     p.  "But education is not provided, our youth is going to other countries via illegal ways & they get drowned in the sea or are being treated as slaves in the Middle East countries."

63.    The aforementioned statements proximately caused Plaintiffs damages in the form of injury to their reputation throughout the United States and internationally.

64.    By publishing the aforementioned statements, defendants knew they would be republished and read by the general public throughout the United States and elsewhere. The statements were in fact republished and read by members of the general public as a direct, natural, probable, and foreseeable consequence of their publications.

65.    The aforementioned statements are false, and were false when made. Defendants knew or should have known the statements were false when made.

66.    Defendants made the aforementioned statements with actual malice and wrongful and willful intent to injure Plaintiffs. The statements were made with reckless disregard for their truth and falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation of Plaintiffs.

67. The aforementioned statements were made of and concerning Plaintiffs, and were understood by those who read Defendants' publications of them.

68. The aforementioned statements have been widely published throughout the United States and elsewhere.

69. Defendants knew or should have known that the statements were injurious to Plaintiffs' career and reputation.

70. As a proximate result of the aforementioned statements and their publications Plaintiffs have suffered and continue to suffer damages in an amount in excess of $75,000.00.

71. The aforementioned false and defamatory statements were made by defendants with actual malice and either with knowledge of their falsity or in reckless disregard of the truth or falsity of the statements.

72. Defendants cooperated among themselves in publishing the false and defamatory statements by, among other acts, republishing and endorsing the defamations of their co-defendants. They are joint tortfeasors and as such, are jointly and severally liable to Plaintiffs for damages.

73. In making defamatory statements, defendants acted intentionally, maliciously, willfully and with the intent to injure Plaintiffs, or to benefit Defendants. Defendants are liable to Plaintiffs for punitive damages.

## COUNT IV

### (False Light)

74. Plaintiffs restate each and every allegation contained in the preceding paragraphs of this Complaint as it fully set forth herein.

75. Defendants' statements broadcasted and posted placed Plaintiffs before the public in a false light.

76. Defendants' statements are highly offensive to a reasonable person.

77. Defendants are at fault and knew or recklessly disregarded the falsehood of their statements above.

78. As a direct and proximate result of defendants' statements above, Plaintiffs

have been and will continue to be damaged and injured in their respective character and reputations, in an amount in excess of $75,000.00.

79. In placing Plaintiffs in false light, defendants acted intentionally, maliciously, willfully and with the intent to injure Plaintiffs, or to benefit defendants. Defendants are liable to Plaintiffs for punitive damages.

## COUNT V

### (Preliminary and Permanent Injunction)

80. Plaintiffs restate each and every allegation contained in the preceding paragraphs of this Complaint as it fully set forth herein.

81. Upon information and belief, some or all of the improper and unlawful conduct of defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Plaintiffs will continue to be irreparably damaged by the same.

82. In the absence of the entry of a preliminary and permanent injunction by the Court, plaintiff will suffer serious and irreparable harm and injury, including but not limited to damage to their reputation.

83. The entry of a preliminary and permanent injunction will not unduly harm or burden defendants because they are required as a matter of law to refrain from disseminating defamatory statements regarding plaintiffs.

84. Public policy favors the entry of a preliminary and permanent injunction because such relief will prevent unlawful conduct and will preserve and protect Plaintiff's reputation.

## COUNT VI

### (Intentional Interference With Prospective Economic Advantage)

85. Plaintiffs restate each and every allegation contained in the preceding paragraphs of this Complaint as is fully set forth herein.

86. Plaintiffs have a continuing economic relationship with their donors, as well as prospective economic relationships reasonably known by all defendants.

87. Defendants knew or should have known about these relationships and

1  prospective relationships at all relevant times.

2  88. Defendants intentionally acted to disrupt the relationships between Plaintiffs
3  and their donors by specifically encouraging donors to refrain from making donations, using
4  the defamatory statements as a basis.

5  89. As a direct and legal result of defendants' intentional acts that disrupted
6  Plaintiffs' continuing and prospective economic relationships with their donors, Plaintiffs
7  have suffered actual and consequential damages, including the loss of substantial donations to
8  the foundation, in excess of $75,000.00.

9  90. Defendants acted intentionally, maliciously, willfully and with the intent to
10  injure Plaintiffs, or to benefit Defendants. Defendants are liable to Plaintiffs for punitive
11  damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against Defendants, and each of them, as follows:

A. For damages in excess of $75,000.00;

B. For preliminary and permanent injunctive relief to prevent defendants, and all persons and acting on their behalf, in concert with them, or under their control, from continuing to publish, broadcast or post in social media or any other media platform or outlet, false defamatory statements concerning the Plaintiffs.

C. For punitive damages
   a. Defendants' aforementioned conduct was conscious, deliberate, intentional and/or reckless in nature.
   b. Defendants' aforementioned conduct was undertaken in a state of mind, which evidences hatred, ill will or a spirit of revenge.
   c. Defendants' aforementioned conduct evidences a conscious disregard for the rights of other persons and has a great probability of causing substantial harm.
   d. As a result, Plaintiffs are entitled to punitive damages and attorneys' fees.

1  D. For costs, interest and attorney's fees; and

2  E. For any other relief that this Court deems just and appropriate.

4  Dated this 6th day of October, 2016.

**HUTCHISON & STEFFEN, LLC**

/s/ Patricia Lee

_____
Patricia Lee (8287)
Peccole Professional Park
10080 W. Alta Drive, Suite 200
Las Vegas, Nevada 89145
plee@hutchlegal.com

*Attorneys for Plaintiffs*